# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| STEPHEN SMITH, | |
| Plaintiff, | Civil Action No. 8:14-cv-03094-DKC |
| v. | Chief Judge Deborah K. Chasanow |
| INTEGRAL CONSULTING SERVICES, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**FIRST AMENDED COMPLAINT**

  COMES NOW the PLAINTIFF, Stephen Smith, by his attorneys, Stember Cohn & Davidson-Welling, LLC, who in support of his FIRST AMENDED COMPLAINT respectfully avers as follows:

**I. INTRODUCTION**

  1. Stephen Smith ("Smith") brings this action against Integral Consulting Services, Inc. ("Integral") for fraudulent inducement, negligent misrepresentation, and breach of contract. As explained herein, Integral recruited Smith when he was working for a military contractor in Afghanistan as an intelligence analyst. Integral offered Smith a position in the United States, assuring him it was secure, well-paying and would not require re-deployment overseas. Integral made these representations to induce Smith to accept its offer, leave his job in Afghanistan and return to the U.S., all of which Smith did. When Smith returned home, however, Integral informed him that it had no job for him.

2. As a result of Integral's conduct Smith has suffered loss of income and benefits as well as emotional distress. By this action, he seeks back and front pay, lost benefits, compensatory, consequential and punitive damages, costs and attorneys' fees.

## II. JURISDICTION AND VENUE

2. Jurisdiction is proper in this removed action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

3. Venue is proper under 28 U.S.C. § 1391(b), because Defendant resides in this district.

## III. PARTIES

4. Plaintiff Stephen Smith is a citizen of the Commonwealth of Pennsylvania who lives in Butler County, Pennsylvania. He was domiciled in the Commonwealth of Pennsylvania throughout the course of events detailed in this Complaint.

5. Defendant Integral Consulting Services, Inc. is a Maryland corporation with its principal place of business at 704 Quince Orchard Road, Gaithersburg, Maryland 20878. Integral was founded in 1998 as an IT recruiting company, but later became a full IT solutions company specializing in biometrics and advanced IT systems. According to its website, Integral is presently an "8(m) Certified, Economically-Disadvantaged Woman-Owned Small Business (EDWOSB) providing information technology services to federal and commercial clients."

6. Over the last five or more years, Integral has advertised on national job websites for individuals willing to work on government contracts, recruited from across the United States, regularly recruited in Pennsylvania, and hired a number of individuals from Pennsylvania.

## IV. FACTS

7.       Smith is an experienced intelligence analyst, with more than 10 years of combined service in the U.S. Air Force and Army, and past intelligence deployments on federally funded service contracts both domestically and abroad.

8.       In March 2012, after finishing a short-term contract in an intelligence-related position in Charlottesville, Virginia, Smith returned home to his family in Butler County, Pennsylvania.

9.       On April 6, 2012, while living in Butler County (a fact known by the company), Integral first offered Smith a job as an Intelligence Analyst.  Integral expressly informed him that its offer was contingent upon Integral's securing an NGIC Biometric Intelligence Program ("BIP") Analysis Support Services contract.  Integral sent Smith an offer letter, a copy of which is attached as **Exhibit 1**.

10.      Smith signed and returned the April 6, 2012 letter to Integral, along with a resume to be used by Integral in its contract bid.

11.      On May 11, 2012, Integral Executive Vice President Abhai Johri ("Johri") emailed Smith, again reminding him of the contingency: "I would like to assure you … a confirmed position on the BIP contract contingent on Integral winning the contract; and we are very confident about winning it."  A copy of Johri's May 11, 2012 email is attached as **Exhibit 2**.

12.      As of July 2012, Integral still had not secured the BIP contract.  Unable to remain unemployed indefinitely, Smith accepted a position with a different employer, Mission Essential Personnel ("MEP").

13.      The job with MEP required Smith to work in Afghanistan as a Counter Intelligence Analyst at a yearly salary of $112,719.60.

3

14.     Provided Smith remained on the MEP job for eleven (11) months, $92,000 or 82% of his salary would be tax-free.

15.     Smith notified Integral that he accepted the MEP position in Afghanistan.

16.     In early September 2012, Integral was awarded and became the prime contractor for the $49.7 million BIP service contract.  A "September 2012" posting on Integral's website states:

> *Integral wins NGIC BIP Contract*
>
> Integral has been awarded an Indefinite Delivery/Indefinite Quantity (IDIQ) contract award along with several Task Orders by the National Ground Intelligence Center (NGIC)'s Biometric Intelligence Program (BIP), to provide forward and reach-back identity intelligence analytical support to BIP's customers.
>
> Under this contract, Integral seeks to perform Biometric Enabled Intelligence (BEI) for a vast array of DoD customers. Integral will provide BEI and all-source Identity Intelligence (I2) analytical support to NGIC, DoD customers/clientele from the tactical to national levels, and interagency partners. Integral also intends to perform watchlist management functions, coordinate reach-back BEI support for deployed forces, and perform related supporting tasks as required.

17.     To be paid under the BIP contract, Integral had to provide the work and services requested in the task orders.  This created a financial incentive for Integral to act rapidly to gather its prospective workforce.  (Integral may also have been subject to strict requirements set by the government client for when it would begin fulfilling its obligations under the contract and orders.)

18.     On September 7, 2012, Integral Senior IT Recruiter Katrin Kassiri ("Kassiri") contacted Smith in Afghanistan to ask if he was available for the job in Virginia on the BIP service contract.

19.     In a series of phone calls, Smith told Kassiri that he would not accept the position unless Integral assured him that it was secure, long-term and non-deployable to Afghanistan.

4

20. In response, Kassiri confirmed that the position Integral was offering to Smith was non-deployable, that it would last longer than his position in Afghanistan, and by email assured him that,

> [t]his contract is for 5 years! You won't make a mistake, even after 5 years, most likely your position is safe.

A copy of Kassiri's email is attached as **Exhibit 3**.

21. By letter dated September 10, 2012, Integral made Smith an unconditional offer of a job on the BIP contract in Charlottesville, Virginia at $83,000 a year, plus benefits, and $2,000 for relocation. A copy of this letter ("Offer Letter") is attached as **Exhibit 4**.

22. It was Integral's practice to check prospective employees' clearances prior to sending such offer letters, and, with respect to the BIP project, the government client had to consent to all hiring decisions. Accordingly, by the time it sent the first unconditional offer letter, Integral knew or should have known whether it could employ Smith on the BIP project. Any decision by Integral to disregard its own procedures in its haste to get work under way so it could start getting paid, and instead unconditionally to assure Smith that he had a job without first consulting the government was at minimum reckless, since the government had the final say over hiring.

23. Based on Integral's representations, including Kassiri's assurances, Smith accepted the offer, signed the Offer Letter, returned it to Integral, and began arranging to leave Afghanistan.

24. Integral's Offer Letter said Smith was to start on or around September 17, 2012.

25. Due to difficulties in leaving Afghanistan, Smith asked Kassiri for the latest date he could start.

26. Kassiri urged him to return immediately so he would not "lose [his] spot."

27. Not wanting to risk losing his "spot," Smith hastily resigned from MEP and arranged to relocate stateside.

28. On September 19, 2012, as Smith was about to ship out, Kassiri informed him that Integral needed to lower the salary it had offered and Smith had already accepted.

29. On September 27, 2012, as Smith was in transit to the U.S., Integral emailed him a revised offer letter for employment at a salary of $76,000. A copy of this letter ("Revised Offer Letter") is attached as **Exhibit 5**.

30. Smith signed and returned the Revised Offer Letter after he arrived home in Butler County, Pennsylvania in early October 2012.

31. Shortly thereafter, Smith contacted Kassiri about his start date. Kassiri told him that the government was staggering start dates, new start dates were being assigned, and Smith would have to wait to get his.

32. Off and on for the past three years, Smith has lived with his girlfriend and her two children, whom he helps care for, in Butler County. Once Smith accepted Integral's job offer, his girlfriend resigned from her job in Pittsburgh and requested a transfer to Charlottesville, and they began searching for a new home and schools in Virginia.

33. In mid-October, Smith contacted Integral's Senior H.R. Manager Thomas Williams about his start date. Williams told him that Integral would have "to go through the necessary processes to provide a start date for all employees." A copy of Williams' October 11, 2012 email is attached as **Exhibit 6**.

34. Smith then contacted Johri directly about the delay. Johri said he could not give Smith a start date because the government client had yet to approve Smith to work on the BIP contract.

35. At no time prior to this conversation, had Integral informed Smith it was awaiting approval of Smith or that the job offer was conditioned on that or anything else.

36. Smith reported to Kassiri what Johri told him. Kassiri said she was not aware that Integral was awaiting or needed approval, but promised to contact Smith as soon as Integral heard anything further on his application.

37. Smith called Kassiri for the last time in or around late October 2012, when she told him that Integral had heard nothing further on his application. When he pressed her on the delay, Kassiri said, "I'm really, really sorry, but at this point it is safe to say that you are not going to be approved because it shouldn't take this long."

38. Smith did not hear anything further from Integral thereafter.

39. In discovery in this action, Integral produced a letter dated October 19, 2012 that indicates that it was sent to Smith at a prior address at which he had not lived for some time. The October 19, 2012 letter was never received by Smith, but purported to notify him that Integral was rescinding Smith's offer of employment due to lack of government client consent.

40. The October 19, 2012 letter states in part:

Integral submitted your name to our client for the NGIC Biometric Intelligence Program (BIP) Analysis Support Services contract in Charlottesville, VA. However, as a condition of our contract, the government must consent to hiring decisions of Integral before we can staff the position. We had every expectation that candidates would join Integral as a result of the consent process, but in your case the government would not provide consent to begin performance.

41. After Integral revoked Smith's offer, a rumor circulated at the company that revocation of the offer to Smith was a personal decision made by Project Manager Mary Pearl and Johri, unrelated to the government client.

### V. CAUSES OF ACTION

#### Count I – Fraudulent Inducement

42. Paragraphs 1 through 34 are incorporated by reference.

7

43. Intending to induce Smith to accept employment, Integral intentionally and/or recklessly misrepresented that he had a secure position and failed to disclose that it had yet to obtain approval, or that its offer was contingent on any future event or occurrence.

44. Integral made these misrepresentations to further its own financial objectives (and possibly also to satisfy requirements imposed by the government client), and without regard for the consequences of its misrepresentations on Smith.

45. Integral's misstatements and failure to disclose the contingent nature its offer were material to Smith's decision to accept its offer.

46. When Integral assured Smith of a secure position on the BIP service contract and told him that he had to leave his job in Afghanistan and relocate halfway around the world or risk losing his "spot," Integral acted with knowledge of the falsity of its representations, or with reckless disregard of whether they were true or false.

47. In reasonable and justifiable reliance on Integral's representations and assurances, Smith signed the Offer Letter and Revised Offer Letter, resigned from a secure position in Afghanistan, moved back to the United States, and arranged to relocate his family to Virginia.

48. As a result of Smith's reliance on Integral's representations and acceptance of a job offer, the material terms of which Integral failed to disclose and/or concealed, Smith has suffered losses, including lost earnings, medical and pension benefits, and unreimbursed expenses, as well as considerable emotional distress.

WHEREFORE, based on the foregoing, Smith asks the Court to:

    a. Assume jurisdiction of this case;

    b. Find and declare that Defendant is liable for fraudulent inducement;

    c.    Award Smith the value of lost (past and future) income, benefits, and expenses in an amount to be determined at trial in excess of $35,000;

    d.    Award Smith compensatory damages for pain, suffering, embarrassment, and other emotional distress in an amount to be determined at trial;

    e.    Award Smith consequential and punitive damages in an amount to be determined at trial;

    f.    Award Smith pre and post-judgment interest;

    g.    Award Smith costs and expenses of suit, and reasonable attorneys' fees as authorized by law; and

    h.    Award Smith such other relief as is necessary or proper.

### Count II – Negligent Misrepresentation

49.    Paragraphs 1 through 40 are incorporated by reference.

50.    In offering employment to Smith, Integral owed Smith a duty of reasonable care, which, among other things, required Integral to truthfully represent the terms of its offer and disclose any contingency or anything else it knew or should have known might be material to Smith in deciding whether to accept Integral's offer—especially where, as here, Integral knew or should have known Smith would be harmed if he relied on them.

51.    Integral falsely represented to Smith that he had accepted a confirmed, secure position, representations that Integral intended Smith to rely upon. In fact, Integral actively encouraged Smith to leave his job in Afghanistan and return to the U.S. or risk losing his "spot."

52.    Integral was negligent in making these statements, since unlike Smith, Integral knew or should have known that the position it offered was contingent and might not be available for Smith once he returned to the United States.

9

53.     Smith, justifiably, and in reasonable reliance on Integral's statements, accepted Integral's job offer, resigned from his position in Afghanistan, returned to the U.S., and made arrangements to move his family from Pennsylvania to Virginia.

54.     Following Smith's return to the U.S., Integral failed to provide him with the secure position it had promised, thereby causing Smith to suffer considerable financial loss and emotional hardship.  These harms were proximately caused by, and were the foreseeable result of, Integral's negligent misrepresentations.

WHEREFORE, on the basis of the foregoing, Smith asks the Court to:

    a.  Assume jurisdiction of this case;

    b.  Find and declare that Defendant is liable for negligent misrepresentation;

    c.  Award Smith the value of lost (past and future) income, benefits, and expenses in an amount to be determined at trial in excess of $35,000;

    d.  Award Smith compensatory damages for pain, suffering, embarrassment, and other emotional distress;

    e.  Award Smith pre and post-judgment interest;

    f.  Award Smith costs and expenses of suit, and reasonable attorneys' fees as authorized by law;

    g.  Award Smith consequential damages; and

    h.  Award Smith such other relief as is necessary or proper.

**Count III – Breach of Contract**

55.     Paragraphs 1 through 46 are incorporated by reference.

56.     Integral made repeated, unconditional offers to employ Smith as an analyst on the BIP service contract, which Smith accepted in the manner Integral requested, thereby creating an employment contract between the parties.

57. Smith also provided additional consideration to Integral, by resigning his job in Afghanistan; moving back to the U.S.; and arranging to relocate.

58. The additional consideration Smith provided gave rise to an implied contract term, requiring Integral to employ him for a period that is "reasonable" under the circumstances.

59. Smith and Integral each exhibited the legal intent to be bound by the contract.

60. Integral breached the contract by failing to provide Smith with the promised position at all, and by failing to employ him for a reasonable period of time.

61. As a result of Integral's breach, Smith left his job in Afghanistan and returned to the U.S., became unemployed, and has suffered and continues to suffer losses, including lost income, medical and pension benefits, and unreimbursed moving and other expenses.

WHEREFORE, on the basis of the foregoing, Smith asks the Court to:

    a. Assume jurisdiction of this case;

    b. Find and declare that Defendant breached its contract with him;

    c. Award Smith consequential damages in an amount to be determined at trial in excess of $35,000, including amounts for unpaid salary, health and pension benefits, relocation benefits, and out-of-pocket expenses;

    d. Award Smith pre- and post-judgment interest;

    e. Award Smith such costs and expenses of suit, and reasonable attorneys' fees as authorized by law; and

    f. Award Smith such other relief as is necessary or proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Dated: February 12, 2015    /s/Maureen Davidson-Welling
Maureen Davidson-Welling, Esquire
PA I.D. No. 206751

John Stember, Esquire
PA I.D. No. 23643
Stember Cohn & Davison-Welling, LLC
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.: (412) 338-1446

Arlus Stephens, Esquire
MD ID No. 16036
astephens@murphypllc.com
**Murphy Anderson, PLLC**
1701 K Street, NW
Suite 210
Washington, DC 20006
T.:  (202) 223-26720
F.:  (202) 223-8651

*Attorneys for Plaintiff*

Deleted: 9
Deleted: Forbes Avenue Ste.1616

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STEPHEN SMITH, | |
|                 Plaintiff, | Civil Action No. 8:14-cv-03094-DKC |
|     v. | Chief Judge Deborah K. Chasanow |
| INTEGRAL CONSULTING SERVICES, INC., | JURY TRIAL DEMANDED |
|                 Defendant. | |

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 12, 2015

/s/Maureen Davidson-Welling
Maureen Davidson-Welling, Esquire
PA I.D. No. 206751
mdw@stembercohn.com
John Stember, Esquire
PA I.D. No. 23643
jstember@stembercohn.com
**Stember Cohn & Davidson-Welling, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.:  (412) 338-1445
F.:  (412) 338-1446

Arlus Stephens, Esquire
MD I.D. No. 16036
astephens@murphypllc.com
**Murphy Anderson, PLLC**
1701 K Street, NW
Suite 210
Washington, DC 20006
T.:  (202) 223-26720
F.:  (202) 223-8651

*Attorneys for Plaintiff*

14