IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHEN SMITH

    v.                         :  Civil Action No. DKC 14-3094

INTEGRAL CONSULTING SERVICES,
INC.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are: (1) a motion for summary judgment filed by Defendant Integral Consulting Services, Inc. ("Defendant" or "Integral") (ECF No. 70); (2) a motion to seal filed by Plaintiff Stephen Smith ("Plaintiff") (ECF No. 84); (3) Plaintiff's motion to strike (ECF No. 87); and (4) Defendant's motion for leave to file supplemental briefing (ECF No. 90). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part and denied in part; the motion to seal will be denied; the motion to strike will be denied; and the motion for leave to file supplemental briefing will be denied.

## I.   Background

### A.   Factual Background[1]

Defendant Integral Consulting Services, Inc. is an information technology solutions company headquartered in Gaithersburg, Maryland. (ECF No. 71-1, at 41-43). Integral staffs the Biometric Intelligence Program Support Services Contract ("BIP Contract"), which is run by the National Ground Intelligence Center, a division of the Intelligence and Security Command of the United States Army. (*Id.* at 51-52). Integral was awarded the BIP Contract in September 2012, and BIP operations are carried out in Charlottesville, Virginia.

Plaintiff Stephen Smith is a United States Air Force and Army veteran with training and experience in interrogation and human intelligence. From November 2011 to March 2012, Plaintiff worked in Charlottesville for Scientific Applications International Corporation, a subcontractor for the BIP Contract-holder before Integral, as an analytical support/intelligence analyst. (*Id.* at 59-60).

In spring 2012, Integral was preparing a bid to be the prime contractor for the BIP Contract and contacted Plaintiff regarding a potential position on the BIP Contract. On April 6,

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff, the nonmoving party. Additional facts will be provided in the analysis.

2012, Integral sent Plaintiff an offer to work on the BIP Contract, contingent upon Integral winning the bid, which Plaintiff signed and returned. (*Id.* at 64-65). Integral submitted Plaintiff's resume as part of its bid. The following month, not yet having been awarded the BIP Contract, Integral offered Plaintiff a position on a different contract, "subject to final confirmation" by the government client. (ECF No. 83-10, at 2). Plaintiff was reportedly not approved by the government to work on that contract and was not hired for that position. (ECF No. 83-3, at 20-24).

In June 2012, Plaintiff was offered a CI Analyst position in Kabul, Afghanistan, with military contractor Mission Essential Personnel. (ECF No. 71-1, at 75). Plaintiff accepted the position, and left the United States to work in Afghanistan on July 15.

Integral was awarded the BIP Contract on September 5, 2012, and became the prime contractor for the BIP Contract. (*Id.* at 77). Under the BIP Contract, Integral was required to provide ninety employees within sixty days of being awarded the contract. Integral was to receive a fee based on a percentage of the total value of the labor and services it provided. Integral had committed to giving preference in staffing the BIP Contract to incumbents working for the previous contractor in its bid proposal, and primarily filled the BIP Contract slots

with those incumbents.  Integral Vice President of Intelligence Operations Mary Pearl was charged with identifying candidates and obtaining government approval to place employees on the BIP Contract.  (ECF No. 83-4, at 31).

Integral recruiter Katrin Kassiri contacted Plaintiff on September 7, informing him that Integral had won the contract and inquiring as to his availability.  (ECF No. 71-1, at 79-83). Plaintiff informed Integral that he was working in Afghanistan but would be interested in the position, and they began negotiations.  Plaintiff had several email and telephone conversations with Ms. Kassiri regarding the position, both before and after receiving a formal offer.  During these negotiations, they discussed Plaintiff's salary, relocation expenses, start date, and notice to his current employer.  Ms. Kassiri repeatedly told Plaintiff that Integral had an open position available for him on the Contract.  (*See id.* at 80 ("You can start as soon as possible.  Once we send you the offer letter how soon can you be here? . . .  The start date is Sep. 17th.  So the sooner you can be here [the] better. . . .  You need to be here ASAP so you won't lose your spot.")).

On September 11, Integral Director of Human Resources Thomas Williams emailed Plaintiff a signed offer letter dated

September 10.[2]  The cover email stated, "I am pleased to announce that Integral has won the BIP contract and we would like to have you come on board ASAP.  Please let me know when you would be available to start with us."  (*Id.* at 85).  The offer letter stated:  "This offer is an offer for employment at will and is not in any way an offer either implied or expressed, for employment for any term or guarantee of employment for any term."  (*Id.* at 87-88).  It offered an annual salary of $83,000 and a joining bonus of $2,000, with a start date of September 17.  A Confidentiality and Non-Solicitation Agreement was attached to the letter.  The letter did not disclose that the offer was subject to government approval or contain other contingencies.

The offer letter had been signed by Mr. Williams and included a section for Plaintiff's signature that stated:  "I fully understand the terms of employment stated herein, and wish to accept this employment offer of Integral Consulting Services, Inc.  AGREED AND ACKNOWLEDGED."  (*Id.* at 88).  Plaintiff signed and dated the letter September 12, 2012.  The same day, he emailed the signed copy to Mr. Williams and Ms. Kassiri and

---

[2] Williams' correspondence identifies him as "Senior Human Resources Manager."  (*See, e.g.*, ECF No. 71-1, at 88).  Plaintiff identified him as "Human Resources VP" (ECF No. 83, at 15), and Defendant in response asserts that Williams was the Director of Human Resources (ECF No. 86, at 18 (citing ECF No. 86-1, at 19)).

confirmed that he would report to Charlottesville, Virginia, on October 1. (*Id.* at 87-95). Plaintiff also gave notice of his resignation to Mission Essential Personnel and arranged to relocate to the United States at that time. (*Id.* at 27).

Between September 12 and 24, Integral and Plaintiff exchanged emails regarding transferring Plaintiff's security clearance to Integral and a possible salary increase. On September 24, Plaintiff sent Mr. Williams an update on his travel delay in returning from Afghanistan. He explained that he was in Kuwait awaiting a flight to the United States, and asked for a start date of October 8 and information on where he was to report in Charlottesville. (ECF No. 83-18, at 3).

After Plaintiff had resigned his former position and while he was in transit to the United States on September 27, Integral emailed him a revised offer letter for employment. (ECF No. 71-1, at 106-07). The revised offer reduced Plaintiff's base salary to $76,000 and eliminated the joining bonus. In all other terms, including a September 17 start date, it was identical to the September 10 offer Plaintiff had signed. Plaintiff received the emailed offer letter while in Kuwait, but was unable to sign and return the letter from there. Plaintiff arrived in the United States in Indiana for out-processing, then traveled to Pennsylvania. Plaintiff testified that he signed the September 27 offer in early October while in Pennsylvania,

and faxed the signed letter to Integral from Pennsylvania. (ECF Nos. 83-6, at 14; 71-1, at 33). Integral accepts this testimony as true for the purposes of this motion, but disputes whether Plaintiff returned the signed revised offer letter (ECF Nos. 71, at 10; 86, at 11), and offers testimony that it never received a signed copy of the revised letter at all (ECF No. 86-1, at 20-21).

After arriving in the United States without having received an updated start date, Plaintiff contacted Ms. Kassiri. (ECF No. 83-6, at 20). Ms. Kassiri informed him that the government was staggering start dates and new start dates were being assigned. On October 10, still not having been told when he should report to Charlottesville, Plaintiff contacted Mr. Williams. (ECF No. 83-18, at 2-3). Mr. Williams emailed Charlottesville office manager Carrie Coviello for Plaintiff's start date, who in turn emailed Ms. Pearl. Ms. Pearl responded to Ms. Coviello and Mr. Williams on October 11, "Stephen Smith has not been approved. I know he was sent a contingent but has no confirmation to return to the program so there is no start date." (ECF No. 83-21, at 2). Mr. Williams told Plaintiff: "We are working on your request with our Integral colleagues in Charlottesville, VA in order to get a start date for you. They are aware of your situation, but they have to go through the necessary processes to provide a start date for all employees.

Thank you for your patience and as soon as we have more information we will contact you." (ECF No. 83-18, at 2).

Plaintiff then contacted Integral Executive Vice President Abhai Johri directly regarding the delay, who informed Plaintiff that he did not have a start date because the government client had not yet approved Plaintiff to work on the BIP Contract. (ECF No. 83-6, at 26). At the time he returned from Afghanistan, Plaintiff believed that the government had already consented to hiring him onto the BIP Contract and "would have never left" his job otherwise. (*Id.* at 22). After Mr. Johri told Plaintiff he had not yet been approved, Plaintiff contacted Ms. Kassiri, who was unaware that Plaintiff had not already been approved. Ms. Kassiri states that in her nearly six years of employment at Integral, it was Integral's practice to check the clearances of prospective employees before sending non-contingent offers of the sort sent to Plaintiff. (ECF No. 83-8, at 4).

On October 19, Mr. Williams sent a letter to Plaintiff rescinding the offer. (ECF No. 71-1, at 109). The rescission letter stated that the offer was rescinded because the government did not consent Plaintiff's hiring.

**B.   Procedural Background**

Plaintiff initiated this case in Pennsylvania state court. After removal to the United States District Court for the Western

District of Pennsylvania, Defendant moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).  (ECF No. 6).  The motion was granted and the case was transferred to this district under 28 U.S.C. § 1631.  (ECF Nos. 19; 20).

After the case was transferred, Defendant moved to dismiss for failure to state a claim, or in the alternative for partial judgment on the pleadings.  (ECF No. 34).  Plaintiff sought leave to amend his complaint in response and filed the Amended Complaint on February 12, 2015.  (ECF No. 40).  Defendant again moved to dismiss the Amended Complaint for failure to state a claim (ECF No. 41), which was denied (ECF No. 48).

Discovery closed on September 18, 2015.  (ECF No. 58). Prior to the close of discovery, Plaintiff moved to compel Defendant to produce a discrete set of responsive documents and answer interrogatories concerning its corporate earnings on the BIP Contract and wealth.  (ECF No. 56).  The court denied the motion to compel without prejudice to renewal later.  (ECF No. 57).  Defendant then filed a motion for leave to conduct the deposition of a former employee, Ms. Kassiri, whose declaration was filed with Plaintiff's reply concerning the motion to compel.  (ECF No. 61).  Defendant recited that the taking of the deposition would not affect the schedule for the filing of a dispositive motion.  The court therefore concluded that the witness' testimony was only relevant to the issue involved in

9

the motion to compel and not relevant to the issues to be raised in the dispositive motion.   Defendant's motion was accordingly denied without prejudice to renewal after resolution of the dispositive motion.   (ECF No. 66).

On February 1, 2016, Defendant filed a motion for summary judgment.   (ECF No. 70).   Plaintiff filed a response in opposition on March 22 (ECF No. 83), and an unopposed motion for leave to file confidential material under seal regarding two exhibits attached to his filing (ECF No. 84).   Defendant replied on April 8.   (ECF No. 86).   Plaintiff filed a motion to strike exhibits attached to Defendant's reply and references to those exhibits in the reply on May 12 (ECF No. 87), to which Defendant filed a response on May 31 (ECF No. 88).   Plaintiff replied on June 14.   (ECF No. 89).   Finally, Defendant filed a motion for leave to file a supplemental brief in support of its motion for summary judgment on June 24.   (ECF No. 90).

## II.  **Plaintiff's Motion to Strike**

After this motion was fully briefed, Plaintiff moved to strike two exhibits to Defendant's reply: the errata sheet prepared by Ms. Pearl following her deposition (ECF No. 86-1, at 11-13), and an email from Ms. Pearl to Mr. Johri referenced in the errata sheet (ECF No. 86-1, at 15-16).   (ECF No. 87).   The motion to strike must be resolved first because Defendant relies on the evidence that Plaintiff seeks to strike in connection

10

with the motion for summary judgment. *See Stanley Martin Cos. v. Universal Forest Prods. Shoffner LLC*, 396 F.Supp.2d 606, 611 (D.Md. 2005) (stating that prior to reviewing motion for summary judgment, the court must evaluate the admissibility of the evidence used in support of or in opposition to the motion).

Many of the corrections which Plaintiff argues should be struck refer to pages of Ms. Pearl's deposition that are not in the record.  Ms. Pearl's corrections to pages 55, 65, and 70 will be disregarded because those pages of her deposition were not included in the record by either party.  Both parties have included additional deposition testimony in their briefing on the motion to strike which was not provided during the briefing of the motion for summary judgment.  This supplemental evidence will be disregarded.

Fed.R.Civ.P. 30(e)(1) permits "changes to deposition testimony in 'form or substance' if the changes are made within 30 days of notification that the transcript is available and accompanied by the reasons for making them." *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296 (D.Md. 2008).  "[C]ourts have differed in the latitude granted to deponents seeking to alter their testimony," *Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, Civ. Action No. ELH-12-505, 2014 WL 853237, at *16 (D.Md. Feb. 28, 2014), but recent decisions of this court "interpret the rule as foreclosing changes that materially alter the testimony

or contradict the testimony," *id.* (quoting *Wyeth*, 252 F.R.D. at 295).

Ms. Pearl's correction to page 60, line 14 seeks to add to her response in order to clarify that she was "unsure whether Mr. Smith's resume was disapproved or whether he was never approved." Ms. Pearl testified repeatedly that she did not recall whether Plaintiff was disapproved or never approved (*see, e.g.*, ECF No. 86-1, at 8-9), and therefore this correction does not contradict or materially alter her testimony.

The remaining disputed corrections and the email that they reference go to whether Ms. Pearl and Mr. Johri discussed Plaintiff's employment on the BIP Contract after October 2012. A year after the events in dispute, Ms. Pearl sent an email to Mr. Johri in which she stated that the government had disapproved Plaintiff as a candidate on the BIP Contract. (ECF No. 86-1, at 15). The corrections and email do not contradict Ms. Pearl's testimony that she does not recall whether Plaintiff was submitted for approval and did not recall having further discussions about Plaintiff's candidacy. (ECF No. 83-4, at 17). The email provides a more accurate answer to Plaintiff's question in showing that Ms. Pearl did discuss Plaintiff the following year in that email, but does not contradict her testimony at the time that she did not recall such a discussion.

Although Ms. Pearl's corrections do not materially alter her testimony, the errata corrections regarding the email and the October 2013 email are immaterial to Plaintiff's claims. Whether Ms. Pearl and Mr. Johri discussed Plaintiff's candidacy between the time his offer letter was sent and rescinded is not addressed by the errata or email, and would in any event not be evidence of a material false statement to Plaintiff on which he could have reasonably relied or provide support for an inference of intent to defraud.   Such a conversation necessarily would have taken place after the alleged misrepresentations were made. Similarly, their email exchange the following year cannot provide a basis for Plaintiff's claims, and it is not offered for its truth (although whether or not Plaintiff was disapproved by the government is also immaterial to his claim, as discussed more fully *infra*).

Plaintiff's motion to strike will be denied, but those references in the errata to testimony outside the record will be disregarded.

## III. Integral's Motion for Summary Judgment

Plaintiff's Amended Complaint (ECF No. 40) contains three counts:  negligent misrepresentation, fraudulent inducement, and breach of contract.  Defendant has moved for summary judgment on all claims.

A.    Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof, however, then there is no genuine dispute of material fact.  *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues

on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). In other words, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted); *see Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

B.    **Negligent Misrepresentation**

The elements of a negligent misrepresentation claim under Maryland law[3] are:  (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

---

[3] Maryland follows the rule of *lex loci delicti* to determine the choice of law in a tort case.  Under this rule, a court applies the law of the state where the wrong occurred.  *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744-46 (2000).  In fraud and negligent misrepresentation cases, Maryland law is not clear as to where the wrong occurs.  *See id.* at 750 n.28; *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F.Supp.2d 309, 320 (D.Md. 2012); *CapitalSource Fin. LLC v. B & B Contractors, Inc.*, No. CIV.A. DKC 2004-3739, 2005 WL 1025953, at *10 (D.Md. Apr. 28, 2005); *Cremi v. Brown*, 955 F.Supp. 499, 522-24 (D.Md. 1997), *aff'd*, 132 F.3d 1017 (4th Cir. 1997).  In *Cremi*, 955 F.Supp. at 522-24, the court held it was reasonable to believe the Maryland Court of Appeals would find the place of wrong to be the place where the alleged misrepresentations took place, not the place where the loss was felt.

The alleged misrepresentations by Defendant were made from Maryland (*see* ECF No. 71, at 19), but received by Plaintiff in Afghanistan.  Plaintiff's losses occurred in Afghanistan when he resigned his former position and arranged to relocate.  Both parties rely on Maryland law for Plaintiff's fraudulent inducement and negligent misrepresentation claims.  As the alleged misrepresentations were made in Maryland and neither party has briefed the substance of Afghanistan law as it would apply to this case, *see Cremi*, 955 F.Supp. at 521-22; Fed.R.Civ.P. 44.1, Maryland law will be applied to Plaintiff's tort claims.

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135–36 (2007). Maryland recognizes negligent misrepresentation claims in the context of an at-will employment relationship.[4]  "The employer's post-employment right to terminate the employment relationship logically or legally cannot immunize the employer from liability for a tort committed before the termination occurred."  *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 20 (2000); *see also Newton v. Kenific Grp.*, 62 F.Supp.3d 439, 442–43 (D.Md. 2014).

While there is "no precise formula," Maryland assesses the nature of the legal relationship between the parties and the harm likely to result from a failure to exercise reasonable care to determine the existence of a duty of care between parties. *Griesi*, 360 Md. at 12 (citing *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534 (1986)).  For negligent misrepresentation claims of economic loss, the duty of care requires demonstrating an "intimate nexus" between the parties, established by showing "contractual privity or its equivalent." *Id.*  The equivalent of contractual privity can be found in pre-contract negotiations. *See, e.g., Newton*, 62 F.Supp.3d at 442; *Griesi*, 360 Md. at 16–17; *Weisman,* 312 Md. 428, 448–51 (1988) (holding that negligent misrepresentation is a viable cause of action in pre-contract

---

[4]  Plaintiff contests whether his employment contract with Defendant was at-will.  The employment relationship here was at-will, as discussed *infra* regarding Plaintiff's breach of contract claim.

employment negotiations); *Lubore,* 109 Md.App. at 338 (holding that employer could be liable to employee who resigned from former job in reliance on negligent misrepresentation).

In *Griesi*, the Court of Appeals of Maryland found an intimate nexus established where negotiations included several pre-offer telephone conversations, a proposed starting date and salary, and a written offer of at-will employment. 360 Md. at 16-17. Similarly, *Newton* found an intimate nexus alleged in an at-will employment context where "the parties conversed over the telephone and email, interviewed in person, and exchanged written documentation of an offer and acceptance with salary terms and a fixed start date." 62 F.Supp.3d at 442.

Plaintiff has produced evidence that an intimate nexus existed between Plaintiff and Integral. Defendant's president, sole owner, and board of directors president Renu Johri made Plaintiff a contingent offer of employment on the BIP Contract in April 2012 so that he could "reserve [his] space" if Defendant won the Contract. (ECF No. 83-9, at 2-4). Once Defendant was awarded the Contract, Defendant contacted Plaintiff and again offered him a position working on the Contract through a telephone call, emails, and a written offer letter that confirmed his salary and start date. (ECF Nos. 71-1, at 80-82, 85, 87-88; 83-8, at 3). Plaintiff had numerous conversations by telephone and email with an Integral recruiter

and its director of human resources regarding the available position, the terms of employment, his relocation expenses and salary, and his start date. (*See, e.g.*, ECF Nos. 71-1, at 79-83, 85, 87-88, 93, 95, 97, 99, 106-07; 83-8, at 3; 83-18, at 2-3). These extensive negotiations can give rise to a duty of care.

A defendant makes a false statement for the purposes of negligent misrepresentation when "the defendant (1) did not know the facts he should have known, failed to investigate facts, or investigated them with less than reasonable care; (2) knew the facts but used words or other communicative devices poorly; or (3) unreasonably failed to make statements at all, or failed to make statements needed to clarify the plaintiff's understanding." *Griesi*, 360 Md. at 555; *see also Lubore v. RPM Assocs., Inc.*, 109 Md.App. 312, 340-41 (1996) (finding negligent misrepresentation where representations were not "purely false as stated" but "became materially misleading by virtue of material facts that [defendants] negligently failed to disclose").

Plaintiff argues that Defendant made false statements by (i) failing to disclose that its offers were contingent on government approval and (ii) by misrepresenting that there was an open position available for him which it had the authority to

offer.[5]  On both of these grounds, Plaintiff has shown a genuine dispute of material fact.

Defendant sent Plaintiff an offer letter on September 11 for a position on the BIP Contract.  (ECF No. 71-1, at 87-88). Unlike similar offer letters Plaintiff had received from Defendant in the past, it did not contain a contingency or disclose that the offer was subject to government approval. (*Compare* ECF No. 71-1, at 87-88, *with id.* at 64-65, *and* ECF No. 83-10, at 2-3).  Defendant never informed Plaintiff his offer was contingent upon government approval.  It was not until after Plaintiff had resigned his former position, relocated to the United States, and repeatedly contacted Defendant for a new start date that Plaintiff was informed that the necessary approval had not been obtained already.  (ECF No. 83-6, at 26). It is undisputed that the necessary government approval had not been obtained when Plaintiff was offered the position.[6]  (ECF

---

[5]  The parties dispute whether Defendant intended to hire Plaintiff at the time of those offers, but this is immaterial. The misrepresentation Plaintiff alleges was that Defendant stated it had a position available to offer Plaintiff and the authority to make that offer, not that it intended to hire him.

[6]  Whether approval was not given because Defendant never submitted Plaintiff's name to the government for approval, as Plaintiff asserts, or because the government "disapproved" of his hiring, is disputed but immaterial.  Regardless of whether Plaintiff's name had been or later was submitted for approval, he had not been approved when Defendant made a non-contingent offer, and it was in failing to disclose that the offer was contingent on approval that had not yet been granted that

Nos. 83-21, at 2; 86-1, at 9).   By failing to disclose that the government had not yet approved Plaintiff to work in the position, Defendant "represented only half of the relevant picture without disclosing the remaining material facts." *Lubore*, 109 Md.App. at 341; *accord Newton*, 62 F.Supp.3d at 443 (finding negligent misrepresentation where written job offer did not disclose that employment was contingent on government approval).   Whether Plaintiff still needed government approval was highly relevant information within Defendant's exclusive control that Plaintiff needed fully to understand Defendant's offer.   *See Griesi*, 360 Md. at 555.   Plaintiff testified that he "would have never left" Afghanistan if he had not believed the government had already approved him.   (ECF No. 83-6, at 21).   A reasonable jury could find that Defendant made this false non-contingent offer negligently, whether by not knowing the facts it should have known or failing to investigate with reasonable care; knowing the facts but communicating them poorly; or failing to clarify Plaintiff's understanding.   *See Griesi*, 360 Md. at 555.

---

Defendant made a misrepresentation.   Similarly, the truth of Defendant's letter rescinding Plaintiff's offer on the basis that the government had disapproved him (ECF No. 71-1, at 109), is immaterial to this claim; this letter was sent on October 19, after Plaintiff had resigned and relocated, and is plainly not one on which he relied.

Plaintiff has met his burden as to the remaining elements of negligent misrepresentation. Plaintiff has shown that Defendant knew he was employed and expected him to resign from that job and relocate to the United States based on its offer (ECF Nos. 71-1, at 80-82, 85, 87-88; 83-8, at 3). Because its offer was contingent on government approval, it was foreseeable that Plaintiff would suffer financial loss if he was not approved and left without employment. Plaintiff has shown that he relied on this misrepresentation (ECF No. 83-6, at 15-17, 21), and that this reliance was reasonable, as the misrepresentation was made by Defendant's recruiter and director of human resources in a formal offer letter. Plaintiff has also shown evidence that he suffered damages from his reliance by resigning and relocating. (*Id.*).

Plaintiff has additionally shown a genuine dispute as to whether Defendant, in making the offer, negligently misrepresented that there was a position available for Plaintiff on the BIP Contract and that it had the authority to offer the position to Plaintiff. Mr. Williams and Ms. Kassiri made a formal offer, confirmed Plaintiff's start date, and repeatedly referred to his "spot" on the contract. Vice President Pearl, however, was responsible for filling positions on the Contract and obtaining the necessary approvals, and she has testified that she did not obtain approval for Plaintiff or request he be

made a non-contingent offer. (ECF Nos. 83-4, at 12-15, 31 ("There's no start date as there's no position or approval."); 86-1, at 9 ("I have no recollection on whether [Plaintiff]'s name was discussed, his resume presented or what the circumstances were. I know he didn't have an approval, therefore I never asked for a firm offer and he did not have a start date.")). Executive Vice President Johri testified that when he learned Plaintiff had been sent a non-contingent letter without government approval in mid-October, he asked Mr. Williams, "Why did you send the letter when he was not approved by the client?" (ECF No. 83-3, at 9). Mr. Johri testified that Mr. Williams "was new at that time. He didn't know exactly what [he could] confirm before sending the offer letter out or whatever caps were, of course, because [Pearl] was really not accessible immediately. . . . So there was a communication gap." (*Id.*).

Whether Defendant in fact had a position available for Plaintiff was material information within the exclusive control of Defendant, and a jury could find that Plaintiff reasonably relied on Defendant's employees' knowledge of the staffing situation. Months earlier, Defendant's president assured Plaintiff there was a position for him, and Ms. Kassiri asserted the continued availability of this position in her September statements. Ms. Pearl did not reserve a position for Plaintiff

and did not obtain approval for him, so Mr. Williams offered a position that was not available. It was reasonable for Plaintiff to "put confidence in the accuracy of [Mr. Williams]'s positive and unequivocal representations of an employment opportunity and that he had authority, or apparent authority, to make such an offer." *Griesi*, 360 Md. at 17. The offer was accordingly a material false statement that a jury could reasonably find Integral made negligently. Defendant plainly intended Plaintiff to rely on its assurances and offer and knew that Plaintiff would rely on its offer, Plaintiff did so rely, and Plaintiff was foreseeably injured.

Defendant responds to both alleged misrepresentations that Plaintiff's reliance was not justifiable because it was clear from the offer letter that the employment was at-will. This argument misstates Plaintiff's claim. It is well established that a prospective employee can justifiably rely on pre-offer statements and written offers even in an at-will context. *Newton*, 62 F.Supp.3d at 443; *Griesi*, 360 Md. at 19-21; *Lubore*, 109 Md.App. at 332-33. A negligent misrepresentation claim is distinct from a breach of contract or promissory estoppel claim. The "essence" of a negligent misrepresentation claim in an at-will employment context "is not whether the parties formed an employment contract," but whether a prospective employer "failed to exercise reasonable care in communicating information to him

that was material to his business decision whether to accept the offer . . ., that he relied on those misrepresentations, and suffered injury as a result of that reliance." *Griesi*, 360 Md. at 19.

Defendant relies on *Eichelberger v. Sinclair Broad. Grp.*, Civ. No. L-08-77, 2009 WL 2229309, at *2-3 (D.Md. July 21, 2009), in which an at-will employee argued she was entitled to rely on her employer's assurances that her employment would continue in the future.  Given the at-will nature of her employment and her failure to establish that she actually relied on the misrepresentations, the court granted summary judgment on her negligent misrepresentation claim.

Plaintiff's claim is distinguishable from *Eichelberger* because he does not attempt to establish that Defendant was required to employ Plaintiff.  The alleged misrepresentation is not Defendant's statement of intent to hire Plaintiff, but rather its representation that it had the authority and availability to offer Plaintiff a position and that its offer was without contingency.  Defendant was legally entitled to terminate Plaintiff's employment at any time, but it was not entitled to induce Plaintiff to leave his former position by falsely representing that it had an available non-contingent position for him.  *See Lubore*, 109 Md.App. at 333 ("Plainly, the wrong of breaching a contract is legally distinguishable from

25

the wrong of intentionally making misleading partial disclosures for the purpose of deceiving a party into taking action."). The other cases on which Defendant relies are similarly distinguishable. *McDermott v. Nat'l Shipping Co. of Saudi Arabia*, 18 F.App'x 120, at 122 (4th Cir. 2001) (holding that plaintiff could not reasonably rely on statement of intent to employ him in at-will context for promissory estoppel claim); *McNierney v. McGraw-Hill, Inc.*, 919 F.Supp. 853, 861-62 (D.Md. 1995) (granting summary judgment where falsity not established and noting in dicta that plaintiff was not entitled to rely on statement of intent to hire in at-will context).

Although the motion for summary judgment on this claim will be denied, the at-will nature of the employment contract does affect the amount of damages available should Plaintiff prevail. *Newton*, 62 F.Supp.3d at 444; *Griesi*, 360 Md. at 20-21. Plaintiff's damages will be limited to those arising from his reliance on Defendant's promise of employment.

### C.   Fraudulent Inducement

Defendant has moved for summary judgment on Plaintiff's claim of fraudulent inducement, or in the alternative for summary judgment on Plaintiff's claim for punitive damages on his fraud claim. The Amended Complaint asserts that Defendant "intentionally and/or recklessly misrepresented that [Plaintiff] had a secure position and failed to disclose that it had yet to

obtain approval, or that its offer was contingent on any future event or occurrence." (ECF No. 40, at 8). This claim is based on the same alleged misrepresentations as Plaintiff's negligent misrepresentation claim.

Under Maryland law, "fraudulent inducement is simply a means of committing fraud." *Sass v. Andrew*, 152 Md.App. 406, 342 (2003) (citing *Councill v. Sun Ins. Office*, 146 Md. 137, 150 (1924)). To prevail on a fraud claim, a plaintiff must show: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F.Supp.3d 588, 612 (D.Md. 2014) (citing *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 544 (2007)). These elements must be established by clear and convincing evidence. *Id.* (citing *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97 (2002)).

A false representation "must be of a material fact" to be actionable. *Gross v. Sussex, Inc.*, 332 Md. 247, 258 (1993). "A 'material' fact is one on which a reasonable person would rely

27

in making a decision," *Sass*, 152 Md.App. at 430, or one that the maker of the misrepresentation knows the recipient would likely regard as important, *Gross*, 332 Md. at 258.  The defendant must "know[] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 232 (1995).  The "misrepresentation must be made with the deliberate intent to deceive." *Sass*, 152 Md.App. at 430 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704 (1998)).  "[T]he defendant must intend to mislead the plaintiff; his misrepresentation must in fact mislead the plaintiff, and the plaintiff must suffer injury resulting therefrom." *Ellerin*, 337 Md. at 232.

As discussed above, Plaintiff has shown that a genuine dispute as to whether Defendant made material false statements on which Plaintiff reasonably relied and that he suffered damages as a result.

Plaintiff has failed to show, however, that a genuine dispute exists as to whether the misrepresentations were made knowingly or with reckless disregard for their truth, or that the misrepresentations were made with the intent to defraud Plaintiff.  The misrepresentations alleged by Plaintiff are that Defendant's offer was not contingent on government approval and that the offer was for an available position and made with the

necessary authority.  Defendant's intent to hire Plaintiff, while clearly related, is not relevant to these alleged misrepresentations.  It would not have been justifiable for Plaintiff to rely on Defendant's intent to hire him, given the at-will nature of the employment offer, but under the circumstances it was justifiable for Plaintiff to rely on the representations of Ms. Kassiri and Mr. Williams that the offer they were making was non-contingent, for an available position, and made with the necessary authority.

Plaintiff has shown that Ms. Kassiri and Mr. Williams believed the offer they made to be non-contingent, for an available position, and authorized.  (ECF Nos. 83-8, at 3; 83-16, at 3-4; 83-6, at 26).  He has also shown that this was false, because the necessary government approval had not been obtained, and either Ms. Pearl did not have a position available for Plaintiff or Mr. Williams did not have the authority to make the offer to Plaintiff.  (ECF Nos. 83-4, at 31; *id.* at 12-15; 83-3, at 9).  He has not shown, however, that Ms. Pearl or anyone else at Integral knew both that these alleged misrepresentations were being made and that they were false at the time of their making or Plaintiff's reliance.  Rather, the evidence shows that Ms. Kassiri and Mr. Williams, the ones making the false statements, believed them to be true.  "[N]o representation believed by its speaker to be true can give rise

to a cause of action in tort for fraud or deceit, no matter how false the representation is, or how negligent the speaker's belief may be." *Ellerin*, 337 Md. at 232.  Reckless indifference requires that a false statement be made "not knowing whether it was true or false and not caring what the facts might be . . . . Misjudgment, however gross, or *want of caution*, however marked, *is not fraud*."  *Id.* (quoting *Cahill v. Applegarth*, 98 Md. 493, 502 (1904)).

Plaintiff attempts to overcome this defect by demonstrating that Ms. Pearl was not considering Plaintiff for the BIP Contract.  If Ms. Pearl were aware that a non-contingent offer was being made to Plaintiff between September 7 and 12, then Integral could be said to have made the false statements knowingly.  But Plaintiff has put forward no evidence to show Ms. Pearl's knowledge of Plaintiff's offer at that time.  Ms. Pearl testified that she did not know a non-contingent offer was made.  (ECF No. 83-4, at 22, 30-31; *see also* ECF No. 83-21, at 2).  Mr. Williams testified that, at some undefined time in this sequence, Ms. Pearl did know that Plaintiff "had been sent a firm offer letter."  (ECF No. 83-16, at 3).  This testimony is insufficient to create a genuine dispute as to whether Ms. Pearl knew about the non-contingent offer before or at the time it was made.  It speaks only to *Mr. Williams'* belief that he had been authorized to make the non-contingent offer.

Plaintiff's evidence shows that Ms. Pearl knew an offer had been made to Plaintiff by September 27 (ECF No. 83-4, at 20), and that she may have had notice on September 17 that Plaintiff had accepted an offer with a start date of October 1 (*id.* at 21-22; ECF No. 85-2, at 2-4).  This would create a genuine dispute as to Defendant's knowledge of the false statements made on or after September 27, but by that time Plaintiff had already acted in reliance on Defendant's earlier statements and the remaining elements of the claim could not be met.

Without any proof of Defendant's knowledge or reckless indifference, Plaintiff also cannot show intent to defraud.  The testimony on which Plaintiff relies regarding Defendant's need to show the government its recruiting capabilities and "bench strength" in order to win the Contract does not provide a reason why Defendant would have intended to defraud Plaintiff after its bid was successful.  There was no need for Defendant to show the government candidates beyond those who were actually hired at that time, and, as Plaintiff emphasizes, there is little evidence that Defendant ever submitted his name for this or any other purpose.

Plaintiff has failed to show a genuine dispute on his fraudulent inducement claim, and Defendant's motion for summary judgment will be granted.

### D. Breach of Contract

### 1. Choice of Law

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Maryland follows the rule of *lex loci contractus* for contract claims, applying the substantive law of the state where the contract was formed, in the absence of a choice-of-law provision in the contract. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573 (1995). "The *locus contractus* is the place where the last act is performed which makes an agreement a binding contract." *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 65–66 (1965). The parties dispute which state's law applies to Plaintiff's breach of contract claim.

The Amended Complaint does not specify when an employment contract was formed, but rather states that "repeated, unconditional offers" were accepted by Plaintiff and created an employment contract. (ECF No. 40, at 11). There were three offer letters in this case: a contingent offer letter dated April 6, an offer letter dated September 10, and a revised offer letter dated September 27.

Plaintiff argued in opposition to Defendant's motion to dismiss that both the April 6 and September 27 offer letters, which Plaintiff stated were signed in Pennsylvania, formed the basis for the employment contract. (ECF No. 43, at 12). Plaintiff has not argued in response to the pending motion that the April 6 letter is relevant; therefore it will not be considered a basis for this claim.

Plaintiff now argues that his signing of the last of these offer letters, *i.e.*, on September 27, constituted the "last act" necessary for the contract's formation. Plaintiff argues that, under Maryland law, the contract was formed in Pennsylvania when he faxed the revised signed offer letter to Defendant. (ECF No. 83, at 43 ("[T]he contract was formed in Pennsylvania, where Smith accepted the written offer by signing and faxing it to Integral.")).[7]

---

[7] This letter was originally sent to Plaintiff by email from Defendant in Maryland. The letter was addressed to Plaintiff in Virginia, but sent while Plaintiff was en route to the United States from his previous position in Afghanistan. Defendant sent the letter while Plaintiff was in Kuwait awaiting a flight, and Plaintiff received the letter in Kuwait but did not have a means of returning the letter from that location. Plaintiff then flew to Indiana for out-processing, and finally traveled to Pennsylvania. Plaintiff has testified that he signed and faxed the letter from Pennsylvania. (ECF Nos. 83-6, at 14; 71-1, at 33). Neither party has submitted the signed version of this offer letter. Defendant disputes whether this letter was returned, but has accepted Plaintiff's testimony as true for purposes of this motion. (ECF No. 71, at 10).

Defendant argues that Plaintiff's theory of breach is based on the negotiations regarding the September 10 letter, and so the signing of that letter was the last act forming the employment contract.  The September 10 letter was signed by Plaintiff in Afghanistan.  Defendant has stated conclusively that Maryland law would apply to a breach of contract claim regarding this offer letter under Maryland's public policy exception to *lex loci contractus*, and neither party has argued for the application of Afghanistan law.  Alternatively, Defendant argues that if the written contract was formed in Pennsylvania when Plaintiff signed the September 27 offer letter, Maryland law applies under the *renvoi* doctrine.

Plaintiff's actions in reliance on the contract occurred prior to his acceptance of the September 27 letter, but Plaintiff nevertheless claims breach of the contract formed by his acceptance of the September 27 offer.  Accepting the testimony that this offer was accepted in Pennsylvania, Pennsylvania law would apply unless the *renvoi* doctrine provides an exception.  Because Plaintiff has failed to show a disputed question of material fact under Pennsylvania law, which he claims is more favorable than Maryland law, it is not necessary to decide which state's substantive law to apply to this claim.

### 2.   Breach of Contract

Assuming *arguendo* that Pennsylvania law would apply as Plaintiff argues, Plaintiff's claim cannot survive summary judgment.   Plaintiff seeks to avoid the consequences of signing an at-will contract by contending that he provided "additional consideration" that gave rise to an implied contract term requiring Defendant to employ him for a term that is "reasonable" under the circumstances.   He cannot do so given the undisputed facts in this case.

In both Maryland and Pennsylvania, an employment relationship is presumed to be at-will, terminable by either party at any time and for any reason.   *Adler v. Am. Standard Corp.*, 291 Md. 31, 35 (1981); *Geary v. U.S. Steel Corp.*, 456 Pa. 171 (1974).   Pennsylvania recognizes an exception to the at-will presumption where the employee has provided sufficient "additional consideration," such as providing the employer "a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform."   *Walden v. Saint Gobain Corp.*, 323 F.Supp.2d 637, 646 (E.D.Pa. 2004) (quoting *Cashdollar v. Mercy Hosp. of Pittsburgh*, 406 Pa.Super. 606, 612 (1991)).   Sufficient additional consideration creates a rebuttable presumption that the parties did *not* intend the contract to be terminable at-

35

will. *Darlington v. Gen. Elec.*, 350 Pa.Super. 183, 200 (1986), *overruled by implication on other grounds*, *Clay v. Advanced Comput. Applications, Inc.*, 552 Pa. 86 (1989).  "On the other hand, if the parties specifically agreed that the employment would be *at-will,* even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will." *Id.*

Both offer letters signed by Plaintiff expressly stated, "This offer is an offer for employment at will and is not in any way an offer either implied or expressed, for employment for any term or guarantee of employment for any term." (ECF No. 71-1, at 87-88, 106-07).  Despite the express disclaimer that the offer was not for any term, Plaintiff argues that the contract's term length is ambiguous in light of conversations between Plaintiff and recruiter Ms. Kassiri regarding the position's security.  Plaintiff further argues that he has provided sufficient additional consideration to create a triable question of fact regarding the parties' intent.

Plaintiff cites a series of emails from September 10 to argue there is ambiguity in the length of the employment contract and a question of whether the contract included a

36

specified temporal duration of employment.[8]   Plaintiff emailed, "[H]ow long is this contract good for?  I don't want to make the same mistake as last time and get there to find out the contract ended in four months."  (ECF No. 71-1, at 81).   Ms. Kassiri responded, "This contract is for 5 years!  You won't make a mistake, even after 5 years, most likely your position is safe." (*Id.* at 80).

Defendant argues that these emails refer to the length of the BIP Contract, not a possible employment contract with Plaintiff, and the record supports Defendant's argument. Plaintiff had previously been employed on the BIP Contract through a different subcontractor.   That position ended when the contractor's contract ended only four months after Plaintiff began work, a fact he had not known until he started.  (ECF No. 71-1, at 15 ("I found out once I got down there, showed up for work, that that contract that they hired me for was actually going to be done in four months.")).   The BIP Contract awarded to Defendant was for a term of five years.  (ECF No. 83-3, at 10).   Plaintiff has not shown any evidence suggesting these statements referred to the length of an employment contract with

---

[8] Defendant asserts that this conversation, predating the September 10 offer letter, is relevant only to an employment contract created under the earlier letter, to which there would be no grounds to apply Pennsylvania law.  Accepting Plaintiff's position that an employment contract was not formed until the September 27 offer was signed, all of the September negotiations can be considered relevant pre-contract negotiations.

Plaintiff rather than the length of Defendant's BIP Contract. In light of the clear at-will language in the offer letters Plaintiff subsequently received and signed, a reasonable jury could not find the contract was for a specific term of employment. The employment relationship was unambiguously at-will.

Plaintiff also asserts that he "provided significant additional consideration by resigning his post in Afghanistan and relocating to the United States." (ECF No. 83, at 48). An additional consideration analysis is unnecessary in light of the written at-will contract. There is not merely a rebuttable presumption that Plaintiff was an at-will employee in this case, but rather an express agreement that he was at-will. As explained in *Walden*:

> In the instant case, the Court's analysis does not proceed from a mere "presumption" that [plaintiff] was an at-will employee; [plaintiff] specifically affirmed the at-will nature of his employment in the Agreement . . . . The "additional consideration" theory of recovery is "an intention-discerning mechanism"; it provides an avenue for establishing the parties' intention that the employment relationship would *not* be terminable at-will. However, where the parties' intention regarding this specific issue is memorialized and agreed upon in an unambiguous written contract, as it is here, "the intent of the parties is to be ascertained from the document itself." Therefore, even if [plaintiff] could establish that he provided [defendant] with additional consideration, the terms of the

> Agreement completely preclude him from establishing that his or [defendant]'s conduct or statements evidence an intent to modify the at-will presumption. . . . [T]he existence of a specific agreement for at-will employment defeats any effort to supplant the at-will presumption.

323 F.Supp.2d at 646-47 (citations omitted); *see also Permenter v. Crown Cork & Seal Co.*, 38 F.Supp.2d 372, 380 (E.D.Pa. 1999) ("[Plaintiff] signed two documents that prominently stated that he was an at-will employee . . . . Even if the court were to find additional consideration, the disclaimers require the court to interpret this as an at-will contract."), *aff'd*, 210 F.3d 358 (3[d] Cir. 2000); *Wakeley v. M.J. Brunner, Inc.*, --- A.3d ----, 2016 PA Super 88, 2016 WL 1572997, at *5 (Pa.Super.Ct. Apr. 19, 2016) (citing *Walden*, 323 F.Supp.2d at 646-47) (signed acknowledgement of at-will employment precluded additional consideration claim as a matter of law).[9]

Moreover, the actions to which Plaintiff points took place before Plaintiff accepted the offer and cannot prove additional consideration. Plaintiff resigned and made arrangements to relocate to the United States on September 12. (ECF No. 83-6,

---

[9] Defendant filed a motion for leave to file supplemental briefing in support of its motion for summary judgment (ECF No. 90) to address *Wakeley*, which was decided after this motion was fully briefed, and its support for Defendant's argument that Pennsylvania does not recognize the additional consideration exception when there is a written at-will contract (ECF Nos. 71, at 25-26; 86, at 22-23). Further argument is not necessary, and this motion is denied.

at 16-17).  He was in the process of relocating when he received the September 27 letter, but has testified that he did not accept that offer until he had arrived in Pennsylvania in early October.  (ECF Nos. 83-6, at 14; 71-1, at 33).  Plaintiff did not take any further actions to relocate to Virginia after accepting the September 27 offer.  Plaintiff cannot simultaneously argue that he did not accept employment with Defendant until his return of the September 27 letter (as he must for Pennsylvania law to be applicable) and that his actions prior to that date provided additional consideration.  If there was no employment contract when Plaintiff relocated, then he did not undergo a substantial hardship or afford a substantial benefit other than he was hired to perform, because he had not been hired at that time.

### 3.  Promissory Estoppel

Plaintiff alternatively argues that, if Maryland law applies, he has shown the necessary elements of a promissory estoppel claim under Maryland law.[10]  This claim was not pled in

---

[10]  Maryland does not recognize a claim of promissory estoppel asserted to establish the existence of a binding employment contract, but it is unsettled whether Maryland would recognize a claim of promissory estoppel supported by reasonable reliance on a promise of at-will employment.  *See Newton*, 62 F.Supp.3d at 445-46 (holding that prospective employee stated a claim where employee quit his prior job based on offer of employment but was never actually employed).  If Maryland does, however, Plaintiff's relief is likely limited to reliance damages, *see id.*, which in this case would be the same as the

the Amended Complaint.  A plaintiff may not amend his complaint through arguments at the summary judgment stage.  "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Sensomatic Sec. Corp. v. Sensomatic Elecs. Corp.*, 455 F.Supp.2d 399, 435-36 (D.Md. 2006) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004)); *see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F.App'x 556, 563 (4th Cir. 2008) (citing *Gilmour*, 382 F.3d at 1315).

Defendant's motion for summary judgment will be granted as to Plaintiff's breach of contract claim.

### E.   Conclusion

For the reasons given, Defendant's motion will be denied as to Count II of Plaintiff's Amended Complaint, negligent misrepresentation, and granted as to Counts I and III, fraudulent inducement and breach of contract.

## IV.  Plaintiff's Motion to Seal

Plaintiff filed an unopposed motion to seal two exhibits to his response in opposition to Defendant's motion for summary judgment.  (ECF No. 84).  Plaintiff's Appendix Exhibit 11 (ECF

---

reliance damages available under his negligent misrepresentation claim.

Nos. 83-12; 85-1) is an excerpt of Integral's BIP Contract bid proposal, and Exhibit 21 (ECF Nos. 83-22; 85-2) is an email thread between Integral employees Thomas Williams and Mary Pearl, dated September 17, 2012, and its attachment. (ECF No. 84). For the reasons that follow, Plaintiff's motion will be denied.

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection. The Court will not rule upon the motion until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials. Upon termination of the action, sealed materials will be disposed of in accordance with L.R. 113.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir.

42

1984).  The court must provide the non-moving party with notice of the request to seal and an opportunity to object before sealing any documents.  *Id.*  This notice requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue."  *Id.* at 234.  The court should consider "less drastic alternatives to sealing," such as filing redacted versions of the documents.  *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004).  If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives.  *Id.*

In addition, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Id.* at 575-76.  This qualified First Amendment right of access "attaches to materials filed in connection with a summary judgment motion."  *Doe v. Pub. Citizen*, 749 F.3d 246, 258, 267 (4th Cir. 2014) (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988)); *Va. Dep't of State Police*, 386 F.3d at 578.  This right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'"  *Doe*, 749 F.3d at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)); *see also In re U.S. for an*

43

*Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access).

The motion is unopposed, but it offers neither a proposed reason supported by specific factual representations to justify the sealing nor an explanation as to why alternatives to sealing, such as redaction, would not provide sufficient protections. The only justification provided for sealing the exhibits is the court's order to compel (ECF. No. 50). (ECF No. 84 ¶ 5). The order to compel ordered Integral to produce all documents that the National Ground Intelligence Center had cleared for release to Plaintiff and designate such documents "Confidential." (ECF No. 50 ¶ 2). The order requires prior approval from Defendant's counsel or the court for the documents to be divulged to anyone other than (i) the parties or their counsel; (ii) the court and its staff; (iii) court reporters; and (iv) fact or expert witnesses. (*Id.*).

In relying solely on the court's order, Plaintiff has failed to comply with the requirements of Local Rule 105.11 and has failed to show a sufficient basis for the motion to seal. "Characterizing documents as 'confidential' without any description of what information they contain or why that information should be protected does not satisfy the 'specific factual representations' that Local Rule 105.11 requires."

44

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455
F.Supp.2d 399, 438 (D.Md. 2006); *see also Butler v. DirectSAT
USA, LLC*, 55 F.Supp.3d 793, 820 (D.Md. 2014) ("Reliance on a
boilerplate confidentiality order with no attempt to redact
portions of the filings, however, is insufficient for a motion
to seal, especially where it is connected with a motion for
summary judgment."). District courts must review the merits of
motions to seal "and not merely allow continued effect to a
pretrial discovery protective order," because "[t]he reasons for
granting a protective order to facilitate pre-trial discovery
may or may not be sufficient to justify proscribing the First
Amendment right of access to judicial documents." *Va. Dep't of
State Police*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at
254).

Examining the exhibits, it is not clear why either should
be sealed. Exhibit 11 is an Integral document marked
"unclassified" which contains a copy of Plaintiff's resume.
Exhibit 21 is the exhibit discussed in Ms. Pearl's deposition,
filed publicly by Plaintiff as Exhibit 3. (ECF No. 83-4, at 20-
26). The email attachment in Exhibit 21 (ECF No. 85-2, at 4)
contains personal identifying information of uninterested third
parties, which should be redacted pursuant to
Fed.R.Civ.P. 5.2(a). Plaintiff has not, however, explained why
redacting such information would not be an effective alternative

45

to the sealing of these documents in their entirety. Particularly in light of the First Amendment interests that attach to judicial records, more limited redactions are preferable to widespread sealing. Accordingly, the motion to seal will be denied without prejudice. Plaintiff will be given fourteen (14) days to file a motion to seal proposing redactions or providing sufficient justifications as to why these exhibits must be sealed in their entirety, until which time the materials currently under seal will remain under seal.

## V.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Integral Consulting Services, Inc. will be granted in part and denied in part. The remaining motions are denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
